# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01077-PAB-NYW

PENELOPE ZELLER, an individual,

      Plaintiff,

v.

VENTURES TRUST 2013-I-NH,
MCM CAPITAL PARTNERS, LLC, its Trustee, an Equity Purchaser from HUD,
DEBRA JOHNSON, Public Trustee for Denver County, and
EAGLE VISTA EQUITIES, Purchaser at Public Trustee Sale,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Defendant Ventures Trust 2013-I-NH by MCM Capital Partners, LLC Its Trustees' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and 8(a) [#15, filed on June 16, 2015],[1] Defendant Ventures Trust 2013-I-NH by MCM Capital Partners, LLC Its Trustees' Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and 8(a) [#27, filed July 8, 2015], Eagle Vista Equities, LLC's Motion to Dismiss dated January 8, 2016 [#50], and Eagle Vista Equities LLC's second

---

[1] Where the court refers to the filings made in Electronic Court Filing ("ECF") system in this action, it uses the convention [#_]. When the court refers to the ECF docket number for a different action, it uses the convention [ECF No. _]. In either case, the court identifies the page number as assigned by the ECF system.

1

Motion to Dismiss dated January 8, 2016 [#53] (collectively, "Motions to Dismiss").[2]  These

Motions to Dismiss were referred to this Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), the

Orders of Reference dated June 3, 2015 [#11]; [#12], and the Memoranda dated June 17, 2015

[#16], July 8, 2015, and January 8, 2016 [#52]; [#54].

## BACKGROUND

### I.    Factual Background

Plaintiff Penelope Zeller ("Ms. Zeller" or "Plaintiff"), initiated this action by her *pro se*

filing[3] of the original Complaint on May 22, 2015.  [#1].  Defendant Ventures Trust 2013 I-NH

by MCM Capital Partners, LLC its Trustee ("Ventures Trust") filed a Motion to Dismiss the

original Complaint on June 16, 2015.  [#15].  Ms. Zeller then filed the operative Amended

Complaint on June 17, 2015.[4]  [#18].

In her Amended Complaint, Plaintiff alleges wrongful foreclosure and illegal transfer of

her homeowner's note and deed of trust in a property located at 3030 St. Paul Street, Denver,

Colorado 80205 (the "Property"), and names as defendants Ventures Trust, Debra Johnson as

---

[2] The substance of the two Motions to Dismiss filed by Eagle appear identical, with the only difference being that a proposed Order is included with [#53].  There is also a separate docket entry on January 8, 2016 that reflects that [#51] was terminated, because it was filed using the incorrect event.

[3] Ms. Zeller is now represented by counsel, who entered an appearance in this case on November 24, 2015.  [#49].

[4] The filing of the Amended Complaint moots Venture Trust's first motion to dismiss directed at the original Complaint.  *Strich v. United States*, No. 09-CV-01913-REB-KLM, 2010 WL 148269, at *1 (D. Colo. Jan. 11, 2010) (citing *Griggs v. Jornayvaz*, No. 09-cv-00629-PAB-KMT, 2009 WL 1464408, at *1 (D.Colo. May 22, 2009); *United States ex rel. Babb v. Northrop Grumman Corp.*, No. 06-cv-00581-EWN-MJW, 2007 WL 1793795, at *1 (D. Colo. June 19, 2007).  This court therefore respectfully recommends denying Ventures Trust's first Motion to Dismiss [#15] as moot without substantive analysis of its contents.

Public Trustee for Denver County ("Public Trustee"), and Eagle Vista Equities, Inc. ("Eagle").[5] [*Id.* at 3].   She avers that the Property was the subject of a wrongful foreclosure in that that the entity who is claimed an adverse interest in the Property was not a proper plaintiff in the foreclosure action, is not a holder and due course, and did not have standing to initiate the foreclosure proceeding.  [*Id.*].

The following facts are relevant to the pending Motions to Dismiss.  In 2005, Ms. Zeller obtained a mortgage to purchase the Property.  [#18 at 8].  In 2007, Ms. Zeller executed a promissory note, refinancing her loan with Countrywide Home Loans ("Countrywide").  [#18 at 8].  Bank of America ("BOA") later purchased Countrywide.  [#18 at 8].  In 2012, BOA initiated foreclosure proceedings on the Property, but no foreclosure sale was scheduled.  [#18 at 11].  In 2013, Ventures Trust began communicating with Ms. Zeller regarding the note and, in 2014, commenced foreclosure proceedings on the property.  [#18 at 13]; [#27 at 5, ¶ 5].  Ventures Trust filed a Colo. R. Civ. P. 120 proceeding and, after a contested hearing, on May 11, 2015, the District Court for the City and County of Denver, Colorado ("Denver District Court") entered an Order Authorizing Sale.  [#27 at 6]; [#27-11 at 1].

On May 22, 2015, the same day Ms. Zeller filed the initial Complaint, she also filed an *ex parte* application for a temporary restraining order.   [#3].   Ms. Zeller filed an amended application for the temporary restraining order four days later on May 26, 2015.  [#5].  The Honorable Philip A. Brimmer denied the amended application for a temporary restraining order the same day, and Ms. Zeller then filed an Amended Amended Ex-Parte Application for

---

[5] Ventures Trust is the lender that foreclosed on the Property; Ms. Johnson is the Public Trustee who conducted the foreclosure; and Eagle is the purchaser of the Property at the public trustee sale.

Temporary Restraining Order on May 27, 2015. [#8]. Judge Brimmer held a hearing and denied the Amended Amended Ex-Parte Application for Temporary Restraining Order on May 28, 2015. [#10].

On May 28, 2015, the Public Trustee held a foreclosure sale, in which Eagle purchased the Property. [#27 at 6]; [#27-13 at 1]; [#17 at 10]. The Public Trustee issued a Public Trustee's Confirmation Deed to Eagle, [#27-14], and on June 3, 2015, the Denver District Court entered an order approving sale [#27-15]. On June 11, 2015, Eagle served a notice to vacate the Property, directing Ms. Zeller to vacate the property on or before June 16, 2015. [#25-1 at 14].

On June 17, 2015, Ms. Zeller filed an application for a preliminary injunction against Eagle [#17] to enjoin it from evicting her from the Property in state court. Eagle asserts that Plaintiff refused to vacate the Property. [#25 at 1]. Two days later, Eagle filed the Complaint in Unlawful Detainer in the County Court for the City and County of Denver, Colorado ("Denver County Court"), seeking judgment in its favor for, among other things, "possession of the Premises." [#25-1]. On July 2, 2015, the detainer action was transferred to the Denver District Court.

On August 7, 2015, Ms. Zeller then filed another motion for a temporary restraining order to prevent her eviction from the Property. [#37]. On August 10, 2015, Judge Brimmer denied the application for a preliminary injunction [#17] and the motion for a temporary restraining order [#37] without prejudice, concluding that the Anti-Injunction Act, 28 U.S.C. § 2283, and *Younger v. Harris*, 401 U.S. 37 (1971) prohibited the court from interfering in the detainer action that was pending in state court. [#40].

4

On November 23, 2015, Eagle filed a Status Report in this case providing an update on the state court action between Eagle and Ms. Zeller. [#48]. Eagle represented that on September 28, 2015, summary judgment was ordered in favor of Eagle and against Ms. Zeller on all issues. [#48 at 1]. Ms. Zeller filed a Motion to Reconsider, and the state court denied that motion on November 18, 2015. [*Id.*]. Eagle represented that at the time of its Status Report, it was proceeding under state law to obtain possession of the Property. [*Id.*].

## II.    Procedural Background of the Pending Motions to Dismiss

The Amended Complaint includes a number of claims based on different legal theories relating to what Ms. Zeller alleges was the wrongful foreclosure on the Property. [#18]. These claims include: (1) unjust enrichment; (2) violation of the Real Estate Procedures Act ("RESPA"), and its implementing regulation, Regulation X; (3) violation of the Fair Debt Collection Practices Act ("FDCPA"), and (4) violation of the Fourteenth and Fifth Amendments based on the deprivation of Ms. Zeller's Property without due process, and deprivation of constitutional rights pursuant to 42 U.S.C. § 1983. *See generally* [*id.*]. Ms. Zeller seeks a declaration that she has the only valid interest in the Property. [*Id.* at 4]. She further requests that the court set aside the Public Trustee sale that occurred on May 28, 2015 as void and invalid and order the title to the Property to be quieted in her favor. [*Id.* at 45-46].

Ventures Trust filed its Second Motion to Dismiss, directed at the Amended Complaint, on July 8, 2015. [#27]. Ventures Trust contends that the claims against it should be dismissed because Plaintiff's claims are barred by the *Rooker-Feldman* doctrine, which prevents the federal court from exercising subject matter over Ms. Zeller's claims because they were already decided by a state court. [*Id.*]. Ventures Trust also argues that Ms. Zeller's Amended Complaint fails to

state a plausible claim under Fed. R. Civ. P. 8(a)(2), including because she relies entirely on "vague unsupported legal theories, bare assertions and wild speculation." [#27-1 at 3]. According to Ventures Trust, the only facts discernible from the Amended Complaint show that Ms. Zeller obtained a loan to purchase the Property, defaulted on the loan, and was foreclosed by an entity with standing to foreclose under Colorado law. [*Id.*].

Defendant Eagle filed two Motions to Dismiss on January 8, 2016. [#50, #53]. Eagle argues that due to the state court's judgment on its behalf, it is entitled to dismissal on Zeller's claims in this case pursuant to Fed. R. Civ. P. 12(b)(1) and (6), claim preclusion, res judicata and collateral estoppel. [#53 at 2]. Eagle also requests an order for attorneys' fees incurred in preparing its Motion to Dismiss. [*Id.* at 8]. Ms. Zeller responds that preclusion should not apply in this proceeding because there was not a final judgment in the state court that related to Eagle and the subject matter in this case, which she characterizes as fraud, was not addressed within the previous judgment. [#55 at 6].

Defendant Debra Johnson, Public Trustee for the City and County of Denver, has not joined any of the currently pending Motions to Dismiss. She filed her Answer to the Amended Complaint on August 7, 2015. [#38].

## ANALYSIS

## I.    Standard of Review

### A.    Fed. R. Civ. P. 12(b)(1)

It is well-settled that federal courts are courts of limited jurisdiction, and as such, "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3

(10th Cir. 2011) (Gorsuch, J., concurring).   Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party.  *Image Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)).   Under Fed. R. Civ. P. 12(b)(1), a court may dismiss a complaint for lack of subject matter jurisdiction.   When a court dismisses a case under Rule 12(b)(1), this is not a determination on the merits of the case, but only a decision that the court lacks the authority to adjudicate the action.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).   A court that lacks jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).    The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso*, 495 F.2d at 909.   Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear her claims.

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack.  *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001); *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Holt*, 46 F.3d at 1002.   Mere conclusory allegations of jurisdiction are insufficient. *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).   Nevertheless, "a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Id.*  As

explained in the *Holt* case, "the jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Holt*, 46 F.3d at 1002.

### B.     Standard Applied to Review of a *Pro Se* Litigant's Pleadings

When a litigant appears before the court *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).   This rule "applies to all proceedings involving a pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 n.3 (10th Cir. 1991) (citations omitted).   However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *see also Firstenberg v. City of Santa Fe, New Mexico*, 696 F.2d 1018, 1024 (10th Cir. 2012) ("[T]he generous construction" that is afforded pro se pleadings has limits, and the court "must avoid becoming the plaintiff's advocate.") (citation omitted).

Although counsel recently entered an appearance on behalf of Ms. Zeller, *see* [#49], Ms. Zeller proceeded *pro se* at the outset of this action.   Accordingly, the court will construe Ms. Zeller's Amended Complaint, her Objection to Ventures Trust's Motion to Dismiss, and any other relevant documents filed prior to the entry of counsel liberally.   *See Eller v. Experian Info. Sols., Inc.*, No. 09-CV-00040-MSK-KMT, 2009 WL 2601370, at *2 (D. Colo. Aug. 20, 2009) (construing *pro se* complaint liberally where counsel recently entered appearance).

## II.    Ventures Trust's Second Motion to Dismiss

Ventures Trust's Second Motion to Dismiss, which has been joined by Eagle [#29],[6] includes two main arguments: (1) Plaintiff's claims are barred by the *Rooker-Feldman* doctrine, which prevents the court from exercising subject matter over Ms. Zeller's claims because they were already decided by a state court [#27]; and (2) Ms. Zeller's Amended Complaint fails to state a plausible claim under Fed. R. Civ. P. 8(a)(2) because she relies entirely on "vague unsupported legal theories, bare assertions and wild speculation" [#27-1 at 3].   The court considers Ventures Trust's jurisdictional argument first because, absent subject matter jurisdiction, the court lacks authority to adjudicate Ms. Zeller's claims.

### A.    The *Rooker-Feldman* Doctrine and its Applicability to Plaintiff's Claims

Ventures Trust argues that Ms. Zeller's claims pertain to a state foreclosure action that has already been completed.  [#27-1 at 8].  Ms. Zeller demands that "the Public Trustee Sale should be set aside and the order issued in the 120 hearing be declared as void ab initio and such be vacated . . . ."  [#18-1 at 1].  Although Ms. Zeller filed her Complaint in this action six days prior to the sale of the Property, Ventures Trust argues that the relief she requests requires this court to review and reject the state court's foreclosure proceeding, in violation of the *Rooker-Feldman* doctrine.  [#27-1 at 1].

---

[6] The court will also consider the *Rooker-Feldman* doctrine as it pertains to Ms. Zeller's claims against the Public Trustee despite the fact that she has not joined the Second Motion to Dismiss based on the court's independent obligation to satisfy itself that it has subject matter jurisdiction.

The *Rooker-Feldman* doctrine stems from a 1923 Supreme Court case, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).   "*Rooker-Feldman* is a jurisdictional prohibition on lower federal courts exercising appellate jurisdiction over state-court judgments." *Campbell v. City of Spencer*, 682 F.3d 1278, 1281 (10th Cir. 2012).   It "precludes a losing party in state court who complains of injury caused by the state-court judgment from bringing a case seeking review and rejection of that judgment in federal court." *Miller v. Deutsche Bank Nat'l Trust Co. (In re Miller)*, 666 F.3d 1255, 1261 (10th Cir. 2012).   "If success on the claims alleged in federal court would necessarily require the federal court to review and reject the state court's judgment, *Rooker-Feldman* applies." *In re Kline*, 472 B.R. 98 (B.A.P. 10th Cir. 2012) *aff'd*, 514 F. App'x 810 (10th Cir. 2013).

In *Niederquell v. Bank of America, N.A.*, the Honorable Marcia S. Krieger addressed the applicability of the *Rooker-Feldman* doctrine to determination made during the Colorado public trustee foreclosure process, noting the importance of the point in the process at which the federal action is initiated.   *Niederquell v. Bank of Am., N.A.*, No. 11-CV-03185-MSK-MJW, 2012 WL 1578060, at *3 (D. Colo. May 4, 2012).   Chief Judge Krieger explained:

> [S]everal courts have reasoned that once the foreclosure sale has occurred and the purchaser/owner/borrower's rights in the property have been extinguished, the *Rooker–Feldman* doctrine would preclude a federal court from determining the purchaser/owner's rights in the property. *See, e.g.*, *Dillard v. Bank of New York*, No. 11–1379, 2012 WL 1094833 at *1 n. 3 (10th Cir., April 3, 2012); *Noland v. Murphy*, Civil Action No. 11–cv–02258–WYD–MEH, 2011 WL 5984863 (D.Colo., Nov. 30, 2011). However, before the foreclosure sale has occurred, the Tenth Circuit and others have reasoned that the *Rooker–Feldman* doctrine does not apply to issues relevant to the Rule 120 determination. *In re Miller*, 666 F.3d 1255, 1262 n.6 (10th Cir.2012); *Rousseau v. Bank of New York*, Civil Action No. 08–cv–00205–PAB-BNB, 2009 WL 3162153 (D. Colo. Sept. 29, 2009) (noting that the text of Rule 120 contemplates that a plaintiff could re-raise arguments concerning the validity of a foreclosure in a subsequent proceeding); *United Guar. Residential Ins. Co. v. Vanderlaan*, 819 P.2d 1103, 1005 (Colo. App. 1991)

> (plaintiff's failure to raise a defense to deficiency in a Rule 120 proceeding did not preclude later challenge). These courts note that Rule 120 expressly states that determination of the motion is not a final determination, and that an unhappy party may initiate a separate action to challenge the determination.

*Niederquell*, 2012 WL 1578060, at *3; *see also McDonald v. One West Bank, F.S.B.*, 680 F.3d 1264, 1266 (10th Cir 2012) ( "*Rooker-Feldman* did not apply to determinations, in Colorado Rule 120 proceedings, at least insofar as preventing a foreclosure sale where proceedings are pending."); (citing *In re Miller*, 666 F.3d 1255, 1261-62 (10th Cir. 2012); *Dillard v. Bank of N.Y.*, 476 F. App'x 690 (10th Cir. Apr. 3, 2012)).

Ms. Zeller focuses on the reasoning in *Niederquell* to argue that dismissal on the grounds of the *Rooker-Feldman* doctrine is not appropriate here because she instituted this case prior to the completion of the foreclosure sale and because Rule 120 proceedings do not produce final judicial determinations that would invoke the *Rooker-Feldman* doctrine. *See* [#18 at 4-5]. In the present case, the initial Complaint was filed prior to the conclusion of the entire foreclosure process. As of May 22, 2015, the date the Complaint was filed, the Public Trustee had not yet held a foreclosure sale. However, the foreclosure sale took place six days later, on May 28, 2015, at which time Defendant Eagle purchased the property. An order was entered approving the sale on June 3, 2015. [#27-13 (Public Trustee's Certificate of Purchase of the Property)]; [#27-15 (Order Approving Sale)].

The court finds it appropriate to take judicial notice of the Public Trustee's Certificate of Purchase of the Property [#27-13] and the Order Approving Sale [#27-15] without converting the Motion to Dismiss to one for summary judgment. *See* Fed. R. Evid. 201(b)(2) (A court may take judicial notice of a fact "that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."); *Smith*

*v. Krieger*, 643 F. Supp. 2d 1274, 1286 (D. Colo. 2009) ("Facts subject to judicial notice may be considered in a motion to dismiss without converting the motion to dismiss into a motion for summary judgment.") (citing *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). The operative Amended Complaint was not filed until June 17, 2015—two weeks after the Public Trustee's Order approving the sale of the Property. The court finds Chief Judge Krieger's reasoning in *McDonald v. J.P. Morgan Chase Bank, N.A.* applicable to the circumstances here. *McDonald v. J.P. Morgan Chase Bank, N.A.*, No. 12-cv-02749-MSK, 2014 WL 334813 (D. Colo. Jan. 30, 2014).

In *McDonald*, Chief Judge Krieger found that the *Rooker-Feldman* doctrine applied to bar claims seeking to invalidate state foreclosure proceedings where plaintiff's claims had been initiated in federal court before any foreclosure sale occurred, but the foreclosure sale became final during the pendency of the federal court case. *McDonald*, 2014 WL 334813, at *3-4. Chief Judge Krieger reasoned that under guidance from the Tenth Circuit, it would have been appropriate for the federal court to stay or dismiss the federal action under the *Colorado River* abstention doctrine during the pendency of the state court action. *Id.* If it had done so, the federal case would not have proceeded until the state court action was final, then requiring invocation of the *Rooker-Feldman* doctrine. *Id.* Chief Judge Krieger explained that "[a]lthough a case like [*D.A.*] *Osguthorpe* [*Family Partnership v. ASC Utah, Inc.*, 705 F.3d 1223, 1232 (10th Cir. 2013)] suggests that the application of *Rooker–Feldman* is dictated strictly by the status of the state court proceeding at the time of the filing of the federal action, this Court sees little justification for allowing a party to forever circumvent the *Rooker–Feldman* doctrine simply by commencing suit in federal court prior to state court proceeding reaching its conclusion." *Id.*

Chief Judge Krieger then concluded that "[a]ccordingly, this Court finds that, because the state proceeding has now become final, it is appropriate at this point to invoke the *Rooker–Feldman* doctrine and dismiss any claims by Mr. McDonald to invalidate the state court foreclosure." *Id.*

Consistent with the reasoning set forth in *McDonald*, this court respectfully recommends dismissing Ms. Zeller's claims here to the extent that they would require this court to undo the state foreclosure proceedings. Although Ms. Zeller initiated this action several days before the foreclosure sale, that sale became final and was confirmed by a state court order during the pendency of this case. To hold otherwise would allow this court to completely undo the foreclosure proceedings. *See Dillard v. Bank of New York*, 476 F. App'x 690, 692 (10th Cir. 2012) (*Rooker-Feldman* bars claims relating to Rule 120 proceedings which "attempt[] to completely undo the foreclosure and eviction proceedings" after they are final); *see also Driskell v. Thompson*, 971 F. Supp. 2d 1050, 1064 (D. Colo. 2013) ("[R]egardless of the fact that Plaintiff initiated this lawsuit prior to the foreclosure sale of the Property, the *Rooker–Feldman* doctrine precludes this Court's subject matter jurisdiction over review of the Rule 120 proceeding for two reasons: first, because the foreclosure proceeding has fully concluded, and second, due to the nature of Plaintiff's request for injunctive relief, *i.e.*, an order that would completely undo the foreclosure proceeding."). The court thus turns to Ms. Zeller's Amended Complaint to address which of her various claims for relief fall within the *Rooker-Feldman* doctrine.

Ms. Zeller states in her Amended Complaint that she has seven causes of action: (1) "declaratory relief: to determine status of Defendants' claims [28 U.S.C. §§ 2201, 22021]"; (2) wrongful foreclosure; (3) quasi contract and unjust enrichment; (4) violation of 12 U.S.C. § 2605

(RESPA); (5) violation of 15 U.S.C. § 1692, et seq. (FDCPA); (6) request for relief under 42 U.S.C. § 1983; and (7) violation of the Fourteenth and Fifth Amendments. [#18 at 2].

### 1.   Request for Declaratory Relief to Determine Status of Defendants' Claims

Ms. Zeller's first cause of action requests the court to "make a finding and issue appropriate orders stating that none of the named Defendants have any right or interest in Zeller's Note, Deed of Trust, or the Property which authorizes them, in fact or as a matter of law, to collect Zeller's loan payments or enforce the terms of the Note or Deed of Trust in any manner whatsoever." [#18 at 25]. Not only does this claim appear to be a request for this court to engage in appellate-type review of the state court foreclosure proceeding, but it would further require the court to review the order of the state court in which that court specifically addressed "whether [Ms. Zeller's] allegation that the foreclosure lender's fraudulent activity is a defense to summary judgment for possession by a winning bidder who acquired the property following a foreclosure sale." [#48-1 at 1]. Accordingly, this court recommends dismissing this cause of action due to the applicability of the *Rooker-Feldman* doctrine.

### 2.   Wrongful Foreclosure

Ms. Zeller's second cause of action is for wrongful foreclosure. [#18 at 26]. This cause of action includes a number of subparts including an argument attacks the validity of Rule 120 proceedings, and arguments that MCM, as Trustee for Ventures Trust, was not the Real Party in Interest with standing to foreclose in the Rule 120 hearing, that there was an invalid transfer of rights in the Property that would deprive Ventures Trust of the legal right to foreclose, and that Countrywide and BOA made promises to Ms. Zeller that they did not keep. [*Id.* at 28-32]. Although certain components of this cause of action are difficult to interpret and may invoke

14

requests for relief against entities that are not parties to this action, the common thread between all of them is that they request this court to find that the state foreclosure proceeding was invalid for one reason or another.  Accordingly, this court recommends dismissing Ms. Zeller's claim for wrongful foreclosure on the basis that it is barred by the *Rooker-Feldman* doctrine.

### 3.    Quasi Contract and Unjust Enrichment

Ms. Zeller's third cause of action alleges that Countrywide and BOA made promises to her that neither of them kept, which in turn caused her default, which in turn caused the endorsement of the Note to HUD, which then endorsed the instruments to Ventures Trust.  [#18 at 34].  Ms. Zeller alleges that on this basis, the instruments that Ventures Trust received should be declared invalid.  [#18 at 34].  Again, this cause of action challenges the validity of the foreclosure proceeding, including because Ms. Zeller ultimately asserts that the mortgage on her property was not valid or otherwise enforceable and that Ventures Trust did not have a valid interest in her property to convey in that sale.  *See Best v. Bank of Am., N.A.*, No. 14-CV-6546 JG LB, 2015 WL 5124463, at *6 (E.D.N.Y. Sept. 1, 2015) (finding that the court lacked subject matter jurisdiction over similar quasi-contract claims on the basis of the *Rooker-Feldman* doctrine).

### 4.    RESPA

Ms. Zeller's claim for relief under RESPA and Regulation X alleges that Ventures Trust failed to respond to a Qualified Written Request ("QWR") that Ms. Zeller sent to Ventures Trust on July 12, 2013 requesting information about her loan and that Ventures Trust failed to make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of the correction; and failed to

protect Ms. Zeller's credit rating upon receipt of her QWR by furnishing adverse information regarding payment to credit reporting agencies as defined in § 603 of the Fair Credit Reporting Act, 15 U.S.C. § 1681(a).  [#18 at 36-37].  Nothing about Ms. Zeller's RESPA claim pertains to the foreclosure proceedings or would require the court to engage in "appellate-type" review of a state court judgment.   Accordingly, this court does not recommend dismissal of Plaintiff's RESPA claim pursuant to the application of the *Rooker-Feldman* doctrine.  *See McDonald*, 2014 WL 334813 at *5 (declining to dismiss plaintiff's RESPA claims because they did not turn on whether or not the foreclosure was proper).

### 5.      FDCPA

This court similarly finds that Ms. Zeller's FDCPA claim, which pertains to the manner in which Ventures Trust and its agents' actions regarding collection of debts Ms. Zeller purportedly owed them relating to the Property, should not be dismissed based on the *Rooker-Feldman* doctrine to the extent that Ms. Zeller seeks monetary damages.   *See Driskell v. Thompson*, 971 F. Supp. 2d 1050, 1065-66 (D. Colo. 2013) (finding that *Rooker-Feldman* did not bar jurisdiction over a FDCPA claim because "Plaintiff's request for money damages pursuant to his FDCPA claim is not an attack on a judgment or proceeding that occurred in the state court.") (internal citations omitted); *Amerson v. Chase Home Fin. LLC*, No. 11-CV-01041-WJM-MEH, 2012 WL 1686168, at *8 (D. Colo. May 7, 2012) *rep't & rec. adopted in part,* No. 11-CV-01041-WJM-MEH, 2012 WL 2862943 (D. Colo. July 11, 2012) ("[T]he Court cannot recommend dismissal of Plaintiff's FDCPA and common law claims for money damages based on the *Rooker-Feldman* doctrine because such claims arose prior to the Rule 120 proceedings and do not require 'appellate-type' review of the proceedings themselves or any judgment

ultimately entered as a result."); *Rousseau v. Bank of New York*, No. 08-cv-00205-PAB-BNB, 2009 WL 3162153, at *4 (D. Colo. Sept. 29, 2009) (plaintiff's FDCPA claims were not barred by *Rooker–Feldman* because the claims were not dependent on the state court's approval of the foreclosure).

### 6.   Request for Relief Under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments

Ms. Zeller's sixth cause of action requests relief under 42 U.S.C. § 1983 for violation of her due process and equal protection rights by Debra Johnson, the Public Trustee for Denver County. [#18 at 39].  In particular, Ms. Zeller states that the Public Trustee, acting "under color of state law, provided for the deprivation of Zeller's property, through the Public Trustee Sale," and that "such action is addressable and should be enjoined by this court." [#18 at 39].  As discussed above, the Public Trustee's Sale and the Rule 120 proceedings are final.  Any review by this court would necessarily invoke the "appellate-type" of review that implicates *Rooker-Feldman*, and the relief Ms. Zeller requests is essentially a request to "undo" the state foreclosure sale.  Accordingly, this court recommends dismissing Ms. Zeller's claim for relief against the Public Trustee for Denver County under 42 U.S.C. § 1983 for lack of subject matter jurisdiction. *See Dillard*, 476 F. App'x at 691; *Orcutt v. Libel*, 381 F. App'x 866, 867-68 (10th Cir. 2010) (affirming district court's dismissal of plaintiff's § 1983 claim arising from a foreclosure proceeding under the *Rooker-Feldman* doctrine).

### 7.   Fifth and Fourteenth Amendment

Next, the court considers whether the *Rooker-Feldman* doctrine bars litigation of Ms. Zeller's Fifth and Fourteenth Amendment claim.  Ms. Zeller's Fifth and Fourteenth Amendment claim alleges that the Rule 120 proceedings and the conduct of the parties, including the

authorization of the sale of the Property without any consideration of any relevant defenses has violated Ms. Zeller's rights to due process and equal protection under the law. [#18 at 41]. Ms. Zeller's claim under this legal theory once again would require this court to address the validity of the state Rule 120 proceedings and undo the foreclosure sale to grant the injunctive relief sought by Ms. Zeller. Accordingly, this court recommends dismissing this claim on the basis of the applicability of the *Rooker-Feldman* doctrine.

On the basis of the foregoing, the court recommends dismissing Ms. Zeller's first, second, third, sixth, and seventh causes of action on the basis of the *Rooker-Feldman* doctrine. However, the court recommends declining to dismiss Ms. Zeller's fourth and fifth causes of action on this basis because the *Rooker-Feldman* doctrine is inapplicable to these claims.

**B.      Statement of a Plausible Claim Under Rule 8(a)(2)**

The court turns next to Ventures Trust's second argument for dismissal of Ms. Zeller's claims. Because the court recommends dismissal of all but two of Ms. Zeller's claims on the basis of the *Rooker-Feldman* doctrine, it will only address Ventures Trust's second argument for dismissal as it pertains to Ms. Zeller's remaining claims for relief under RESPA and the FDCPA. According to Ventures Trust, Ms. Zeller's claims for relief should be dismissed under Fed. R. Civ. P. 8(a)(2), including because she fails to provide plausible supporting facts for her claims. *See* [#27-1 at 3].

**1.      RESPA**

Ventures Trust argues that Ms. Zeller fails to state a claim for her RESPA cause of action because the Qualified Written Request ("QWR") that she alleges in the Amended Complaint that she sent to Ventures Trust does not, in fact, qualify as a QWR that would trigger Ventures

Trust's duty to respond.  [#27-1 at 5-6].  Ventures Trust alleges that this is the case because Ms. Zeller describes her QWR as a request "to identify Zeller's loan . . . and the identity and contact information of the Holder in Due Course of Plaintiffs Note . . ."  [#27-1 at 6 (citing [#18 at 40])].  Ventures Trust alleges that this means that what she sent was not a QWR because a letter cannot be qualified under RESPA if it does not relate to the servicing of the account.  #27-1 at 6 (citing *Harris v. Am. Gen. Fin., Inc.*, No. Civ. A. 02-1395, 2005 U.S. Dist. LEXIS 33260, 2005 WL 1593673, at *3 (D. Kan. July 6, 2005))].  The statute defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan."  12 U.S.C. § 2606(i)(3).

The court must construe Ms. Zeller's Amended Complaint liberally because she was proceeding *pro se* when she drafted it.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Bellmon*, 935 F.2d at 1110.  However, the court is mindful that it should not be the *pro se* litigant's advocate.  *See Hall*, 935 F.2d at 1110.

"To be a QWR, the correspondence must (1) be written; (2) not be included with a payment; (3) include the name and account number of the borrower, or a way to enable the servicer to identify the account; and (4) include a statement of the reasons the borrower believes the account to be in error, or include sufficient detail to enable the servicer to determine what information is being sought."  *Moody v. CitiMortgage, Inc.*, 32 F. Supp. 3d 869, 873 (W.D. Mich. 2014) (citing 12 U.S.C. § 2605(e)(1)(B)).  Ms. Zeller's Amended Complaint states that she sent a request to Ventures Trust that "contained information to enable Ventures Trust to identify

Zeller's loan and also contained requests for information of the loan, specifically the identity and contact information of the Holder in Due Course of Plaintiffs Note, accumulated late fees and charges, and requested information to verify the validity of the purported debt owed to any of the parties in the purported chain of title." [#18 at 36]. Under Rule 8(a), an operative pleading need only give the opposing side fair notice of the basis of the claims; it is not intended to facilitate consideration of the merits of a claim at that stage. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002). The court finds the factual allegations in the Amended Complaint sufficient to meet the threshold burden of pleading required by Rule 8(a) of the Federal Rules of Civil Procedure that Ms. Zeller did send a QWR to Ventures Trust. Venture Trust has failed to identify any other basis to justify dismissal of Plaintiff's RESPA claim, and this court declines to suggest any. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself"); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that the court has no obligation to make arguments or perform research on behalf of litigants). Accordingly, the court respectfully recommends denying Defendant's Second Motion to Dismiss as to Ms. Zeller's RESPA claim.

### a.  FDCPA

Ventures Trust alleges that Ms. Zeller's FDCPA claim should be dismissed because Ventures Trust did not make any false representations, engage in any deceptive practices, or make any threat of action which could not be taken legally. [#27-1 at 6]. Ventures Trust further alleges that the FDCPA claim fails because many of Ms. Zeller's claims regarding violations of the FDCPA occurred within the constructs of a foreclosure action and therefore do not constitute debt collection activities. [*Id.* at 7].

The court finds Ventures Trust's first argument to be without merit as a basis for dismissal of Ms. Zeller's FDCPA claim on a motion to dismiss. A determination that Ventures Trust did not engage in any deceptive practices when attempting to collect moneys owed by Ms. Zeller goes to the merits of Ms. Zeller's claims and is not an appropriate determination on a motion to dismiss. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 585, 127 S. Ct. 1955, 1982, 167 L. Ed. 2d 929 (2007) (citing *Swierkiewicz* for the proposition that "[w]e also observed that Rule 8(a)(2) does not contemplate a court's passing on the merits of a litigant's claim at the pleading stage.")

Ventures Trusts' second argument is that its actions in attempting to collect payments from Ms. Zeller occurred in the context of foreclosure, and that courts have recognized that the FDCPA does not apply to foreclosure actions. [#27-1 at 7]. Other courts in this District have acknowledged that the FDCPA may not apply to actions taken within the context of a non-judicial foreclosure. *See Rousseau,* 2009 WL 3162153, at *9 (characterizing foreclosures in Rule 120 proceedings as non-judicial foreclosures and acknowledging that the FDCPA may not apply to actions taken within a non-judicial foreclosure). Nonetheless, the court notes that Ms. Zeller's Amended Complaint states that she attempted to dispute the debts that Ventures Trust was attempting to collect "beginning September 2012 and continuing through October 2014." [#18 at 38]. As Ventures Trust argued in its Second Motion to Dismiss, it did not begin the foreclosure process until 2014. [#27 at 5, ¶ 5]; [#27-10]. Accordingly, affording Ms. Zeller's Amended Complaint a liberal construction, Ms. Zeller's FDCPA claim pertains at least in part to actions taken outside of the foreclosure process, which may properly fall within the scope of FDCPA. *See Rousseau,* 2009 WL 3162153, at *9 (plaintiff's allegation regarding debt collection

outside of foreclosure were sufficient to state a claim). This court finds that based on the record before it, it is more appropriate for the court to determine whether Ms. Zeller has stated a legally cognizable claim under the FDCPA after discovery is taken on when and how she attempted to dispute debts with Ventures Trust.

### B.     Eagle's Motion to Dismiss

On January 8, 2016, Eagle filed two Motions to Dismiss.  [#50]; [#53].  The Motions to Dismiss are identical in substance, with the only difference appearing to be that one of the motions does not include an attached proposed order.  This court respectfully recommends that Eagle's first Motion to Dismiss docketed at [#50] be denied as moot in light of the filing of the second Motion to Dismiss.  This court also recommends denying the second Motion to Dismiss as moot in light of its recommendation that all of the claims in the Amended Complaint against Defendant Eagle be dismissed in light of the *Rooker-Feldman* doctrine.

The court notes that in its Motions to Dismiss, Eagle requests attorneys' fees incurred in preparing the Motions to Dismiss, *see* [#53 at 8].  This court recommends denying this request because Eagle has not established (nor even argued) its entitlement to such fees.

### CONCLUSION

For the foregoing reasons, this court respectfully **RECOMMENDS** that:

(1)     Defendant Ventures Trust 2013-I-NY by MCM Capital Partners, LLC Its Trustees' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and 8(a) [#15] be **DENIED** as **MOOT**;

(2)     Defendant Ventures Trust 2013-I-NY by MCM Capital Partners, LLC Its Trustees' Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R.

Civ. P. 12(b)(6) and 8(a) [#27] be **DENIED IN PART** as it pertains to Ms.

Zeller's claims for relief under RESPA (claim 4) and the FDCPA (claim 5)

against Ventures Trust and **GRANTED IN PART** as to Plaintiff's remaining

claims of "declaratory relief: to determine status of Defendants' claims [28 U.S.C.

§§ 2201, 22021]" (claim 1); wrongful foreclosure (claim 2); quasi contract and

unjust enrichment (claim 3); request for relief under 42 U.S.C. § 1983 (claim 6);

and violation of the Fourteenth and Fifth Amendments (claim 7);

(3)     Eagle Vista Equities, LLC's Motion to Dismiss [#50] be **DENIED** as **MOOT**;

(4)     Eagle Vista Equities LLC's second Motion to Dismiss dated January 8, 2016

[#53] be **DENIED** as **MOOT,** in light of the Recommendation by this court to

apply the *Rooker-Feldman* doctrine to all claims asserted against Eagle Vista

Equities LLC; and

(5)     Defendants Deborah Johnson, Public Trustee for Denver County and Eagle Vista

Equities LLC be **DISMISSED**, based on the court's lack of subject matter

jurisdiction over all claims asserted against them arising from the application of

the *Rooker-Feldman* doctrine.[7]

---

[7] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district

DATED: February 1, 2016                    BY THE COURT:


                                           s/Nina Y. Wang_____
                                           United States Magistrate Judge

---

court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).